## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CINDY POTTS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NOVITAS SOLUTIONS, INC.,

and

DIVERSIFIED SERVICE OPTIONS, INC. d/b/a GUIDEWELL SOURCE,

Defendants.

Case No.: 1:22-cv-00986-KM

Hon. Jennifer P. Wilson, U.S.D.J.
Hon. Karoline Mehalchick, C.U.S.M.J.

*ELECTRONICALLY FILED*

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO DIRECT CLASS NOTICE AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

INTRODUCTION                                                                                     2

SUMMARY OF THE LITGATION                                                          4

    I.    The Nature of the Claims                                                   4

    II.    Procedural History of the Litigation                              5

    III.  The Parties Engaged in Arms-Length Settlement Negotiations     7

SUMMARY OF KEY SETTLEMENT TERMS                                       7

    I.    The Settlement Class                                                      7

    II.    The Settlement Benefits                                                  8

    III.  Proposed Notice Program, Settlement Structure, and Release     9

    IV.  Service Awards, Attorneys' Fees and Costs                    12

ARGUMENT                                                                                            13

    I.    Standard of Review                                                        13

    II.    The Proposed Settlement is Fair, Reasonable, and Adequate     14

        A. Class Counsel Has Adequately Represented the Class        15

        B. The Settlement Was Negotiated at Arm's Length              16

        C. The Relief Provided to the Class is Adequate Under Fed. R.
Civ. P. 23                                                                                              16

            1.  The Relief Provided to the Class is Adequate Considering
the Costs, Risks, and Delay of Trial and Appeal                18

2. The Relief Provided to the Class is Adequate Considering

the Effectiveness of Distributing Relief to the Class          18

3. The Relief Provided to the Class is Adequate Considering

the Terms of the Proposed Award of Attorneys' Fees          19

4. The Relief Provided to the Class is Adequate Considering

There are No Agreements Required to be Identified Under

Rule 23(e)          19

D. The Settlement Treats Class Members Equitable

to One Another          20

III.  Class Certification for Settlement Purposes is Warranted          20

A. Numerosity is Likely to be Satisfied          21

B. Commonality is Likely to be Satisfied          22

C. Typicality is Likely to be Satisfied          23

D. Adequacy is Likely to be Satisfied          23

E. Predominance is Likely to be Satisfied          24

F. Superiority is Likely to be Satisfied          25

IV.  The Proposed Class Notice Satisfies Rule 23          26

V.  The Proposed Implementation Schedule          28

CONCLUSION          29

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,                                          26
 521 U.S. 591, 620, (1997)

*Baby Neal for & by Kanter v. Casey*,                                        22
 43 F.3d 48, 56 (3d Cir. 1994)

*Dillworth v. Case Farms Processing, Inc*.,                                  17
 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010)

*Hayes v. Wal-Mart Stores, Inc*.,                                            21
 725 F.3d 349, 357 (3d Cir. 2013)

*Huffman v. Prudential Ins. Co. of Am*.,                                  22, 23
 2018 WL 583046, (E.D. Pa. Jan. 29, 2018)

*In re Baby Products Antitrust Litig*.,                                      14
 708 F.3d 163, 173-74 (3d Cir. 2013)

*In re Gen. Motors Pick-Up Truck Fuel Tank Products Liab. Litig*.,          14
 55 F.3d 768, 784 (3d Cir. 1995)

*In re Modafinil Antitrust Litig*.,                                          21
 837 F.3d 238, 250 (3d Cir. 2016)

*In re Nat'l Football League Players' Concussion Injury Litig*.,            13
 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014)

*In re Prudential Insurance Co. America Sales Practice Litig*.,             25
 148 F.3d 283, 316 (3d Cir. 1998)

*In re Viropharma Inc. Sec. Litig*.,                                         16
 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016)

*In re Warfarin Sodium Antitrust Litig.*,                                    15, 23
 391 F.3d 516, 537 (3d Cir. 2004)


*SEPTA v. Orrstown Fin. Servs.*,                                            13
 2023 LEXIS 17135, at *2 (M.D. Pa. Feb. 1. 1, 2023)

*Southwood v. Milestone Mgmt. PA-Feasterville, LLC*,                        18
 2020 WL 5554396, at *4 (E.D. Pa. Sept. 15, 2020)

*Tompkins v. Farmers Ins. Exch.*,                                          19
 2017 WL 4284114, at *9-10 (E.D. Pa. Sept. 27, 2017)

*Tyson Foods, Inc. v. Bouaphakeo*,                                         24
 136 S. Ct. 1036, 1045 (2016)

**Statutes**

29 U.S.C. §§ 201 to 219                                                    *passim*
43 P.S. §§ 333.101 to .115                                                 *passim*
43 P.S. §§ 260.1 to .12                                                    *passim*

**Rules**

Fed. R. Civ. P. 23                                                        *passim*
Fed. R. Civ. P. 23(a)                                                      21, 23
Fed. R. Civ. P. 23(b)                                                     *passim*
Fed. R. Civ. P. 23(c)(2)                                                  26, 27, 28
Fed. R. Civ. P. 23(e)                                                     *passim*
Fed. R. Civ. P. 23(e)(1)(B)                                              13, 14, 20, 26
Fed. R. Civ. P. 23(e)(2)                                                  *passim*

**Other Authorities**

Newberg on Class Actions § 4:69                                            25

## **INTRODUCTION**

Plaintiff Cindy Potts ("Potts" or "Plaintiff") respectfully submits this memorandum of law in support of Plaintiff's Unopposed Motion for Preliminary Approval of the Settlement Agreement as a result of a settlement reached in this class and collective action wage and hour dispute between Plaintiff and Defendants, Novitas Solutions, Inc. ("Novitas") and Diversified Service Options, Inc., d/b/a Guidewell Source ("Guidewell").

On June 22, 2022, Plaintiff Cindy Potts filed this class and collective action alleging that the Defendants failed to pay Potts, and those similarly situated, overtime compensation as a result of Defendants misclassifying Potts as exempt from the mandatory overtime pay provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 219 (the "FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101 to .115, along with claims under the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1 to .12.

On December 8, 2022, the parties agreed to engage in Alternative Dispute Resolution ("ADR"), which was approved by the Court. (ECF No. 22). The parties exchanged informal discovery, engaged in arm's-length settlement negotiations over a period of months, and attended a settlement conference before Chief U.S. Magistrate Judge Karoline Mehalchick at which the parties were able to reach a settlement of this action.

finally approved. The Settlement Agreement and Notice packet are attached hereto as **Exhibits 1** and **2**, respectively.

## SUMMARY OF THE LITIGATION

### I.    The Nature of the Claims

Plaintiff Potts worked as a Targeted Education Specialist ("TES") at Novitas's business location in Mechanicsburg, Pennsylvania between September 2018 and April 2022. *See* Class and Collective Action Complaint ("Compl."), ECF Doc. 1 at ¶ 1. As a TES Employee, Ms. Potts was initially paid $61,000 per year and was classified as exempt from overtime requirements under the FLSA and PMWA. *Id*. at ¶ 10.

Plaintiff Potts further alleged that Defendants' TES employees were misclassified by Defendants as exempt from overtime payment under the FLSA and PMWA. Plaintiff Potts alleged that she and all other TES employees regularly worked in excess of forty (40) hours per week, and in such instances Defendants did not pay Plaintiff Potts or other TES employees overtime pay at one and one-half (1 ½) times their hourly rate for all hour worked over forty (40) in a workweek. *2* at ¶¶ 51, 66.

Plaintiff Potts filed her original complaint against Defendants on June 22, 2022, asserting three causes of action – all tied to alleged non-payment of overtime by Defendants – under the FLSA, the PMWA and the PWPCL. Plaintiff asserted

Following the February 7, 2023 settlement conference before this Honorable Court, Plaintiff Potts and Defendants have now agreed on a class-wide resolution to these claims. The Settlement Agreement provides for a $500,000 settlement fund to resolve the claims of the twenty-four (24) Targeted Education Specialist workers. After deducting a $5,000 service award for Plaintiff Potts, and one-third of the fund for class counsel's attorney's fees and $572.00 for reasonable expenses, the average estimated TES Employee Class settlement payment is over $3,800. In exchange for their settlement payments, class members agree to an appropriately narrow release of claims tailored to the facts asserted in the complaint. In exchange for her additional service award, Plaintiff Potts agrees to a general release of her claims against Defendants. This is a fair result for the class.

Pursuant to Rule 23(e)(1), an order directing notice to the class is justified where the Court concludes that it will likely be able to (1) approve the settlement as fair, reasonable, and adequate, and (2) certify the class for purposes of the settlement. Accordingly, Plaintiff Potts requests—and Defendants do not oppose—that the Court permit the issuance of notice of the proposed settlement to the class, approve the form and manner of notice to the class, appoint Plaintiff's counsel as class counsel, appoint Defendants to administer the class notice plan and to fulfill the duties of the Settlement Administrator as outlined in the Settlement Agreement, and schedule a final approval hearing to determine whether the Settlement should be

3

these claims on behalf of a class and collective of similarly situated TES Employees. *Id*. at ¶¶ 26-47.

## II.    Procedural History of the Litigation

Plaintiff Potts filed her original Complaint against Defendants on June 22, 2022. (ECF No. 1). Defendants filed an Answer to the Complaint on September 14, 2022, specifically denying that Defendants failed to pay Plaintiff Potts or any other employee for all overtime worked and specifically denying that Defendants subjected Potts or any other employee to any unlawful treatment at any time. *See* Defendant's Answer to Plaintiff's Compl. (ECF Doc. 12).

On October 5, 2022, Defendants filed their First Amended Answer to Plaintiff's Complaint to set forth certain facts in greater detail and to more fully explicate their defenses. (ECF Doc. 16). In their First Amended Answer, Defendants admitted that Novitas previously employed Potts as a TES and that Potts worked in excess of forty (40) hours per week during some workweeks and maintained that Defendants paid Potts and all other TES workers appropriately and did not otherwise subject Potts or any other TES worker to any unlawful treatment at any time. *Id*. The First Amended Answer further explained that on September 7, 2022, Defendant Novitas sent Potts a check in the amount of $5,325.12, less applicable payroll deductions, representing payment in excess of (1) overtime premiums for Potts's reported and certified overtime hours worked between June 22, 2019, and the

termination of her employment, and (2) a sum reflecting the increases in Potts's annual incentive payments resulting from the foregoing overtime payments. *Id.* Additionally, on September 28, 2022, Defendant Novitas sent Potts a second check in the amount of $5,325.12, representing payment in excess of all enhanced damages available to her under the FLSA and Pennsylvania law. On September 8, 2022, Defendant Novitas sent retroactive payment to all TES Employees reflecting their overtime premiums for all hours worked from June 22, 2019, through September 3, 2022, along with a sum reflecting the increase in each employee's annual incentive payments resulting from the foregoing overtime payments (the "September 28, 2022 TES Payments"). Additionally, effective September 4, 2022, Defendant Novitas reclassified the TES position as non-exempt from the FLSA's mandatory overtime provisions and began paying TES employees on an hourly basis and for all overtime hours worked in a workweek.

Following a robust exchange of informal discovery as well as arm's-length settlement discussions between counsel, the Parties mutually agreed to petition the Court to request a referral to a Settlement Conference before Chief United States Magistrate Judge Karoline Mehalchick. By Order dated December 8, 2022, the matter was referred to Judge Mehalchick for the purpose of conducting a settlement conference. Following continued arm's-length settlement negotiations between the Parties during the February 7, 2023 settlement conference, the Parties reached a

settlement of the action in accordance with the terms provided for in the Settlement Agreement, which are discussed at length herein.

### III.    The Parties Engaged in Arm's-Length Settlement Negotiations

The parties attended a settlement conference before Judge Mehalchick on February 7, 2022. Defendants provided Plaintiff with class-wide wage and hour information (including timekeeping information and payroll information for each TES employee) as well as information relating to payments already made to the putative class prior to the settlement conference to allow Plaintiff's counsel to determine damages. The Parties disclosed their positions on liability, class and conditional certification, and damages to Judge Mehalchick beforehand through Pre-Settlement Conference Memoranda. Plaintiff analyzed timekeeping and payroll records for the twenty four (24) class members to calculate class-wide damages for the overtime payment claims. On February 7, 2023, following extensive settlement discussions between the parties, which included a conference call with Judge Mehalchick, the parties attended a full-day settlement conference before Judge Mehalchick and ultimately agreed to a class-wide settlement.

## SUMMARY OF KEY SETTLEMENT TERMS

### I.    The Settlement Class

The parties ask the Court to certify one settlement class of employees of Defendant Novitas:

**The "Putative FLSA Collective" and the "Pennsylvania Wage Law Class" (collectively the "Class Members")**: all individuals employed by Novitas as Targeted Education Specialists during the relevant time period of June 22, 2019 to September 3, 2022 who did not receive timely payment of all regular and overtime wages to which they were entitled.

The class is comprised of twenty-four (24) Targeted Education Specialist employees, including Plaintiff Potts.

## II.    The Settlement Benefits

The settlement provides for a $500,000 common fund (the "Gross Settlement Fund") to pay class members, to pay the cost of settlement administration, to pay a service award to Plaintiff Potts, and to pay Class Counsel's fees and expenses. *See* Ex. 1, Settlement Agreement, ¶¶ 7, 10, 11. The settlement fund includes monetary payments Defendants have already unconditionally paid to the Putative Class Members after the filing of this litigation prior to mediation of this matter, primarily by and through the September 8, 2022 Class Payments, in the amount of $234,900.42. *Id.* at ¶ 7a. Based on Class Counsel's damages calculations, the $500,000 common fund represents not only payment of overtime wages for all hours certified by TES employees in excess of forty (40) hours during the class period, but also all liquidated and enhanced damages attainable under federal and state law. The net fund of $92,460.91 will be allocated to the Class Members. Ex. 2, *Notice of Settlement* at ¶ 4.

Class Counsel estimates that, after accounting for a service award, Class Counsel's fees and expenses, and reducing the Gross Settlement Fund by the amount already paid to the Class Members by Defendants, the average Class Member settlement payment from the net settlement fund will be $3,869.00. However, in no event will a class member receive less than $100. *See* Ex. 2, Notice of Settlement, ¶ 4. Each Class Member's individual settlement payment is determined as follows:

(1) Every Class Member will receive a minimum payment of $100. If the Class Member's *pro rata* share (described below) falls below $100, then the Class Member will receive this minimum payment instead.

(2) Every Class Member will receive a proportional share of the Net Allocation Fund based on their portion of the wage payments sent to all Class Members on September 8, 2022 after reclassification. For example, if a Class Member's wage payment after re-classification was 2% of all wage payments made to the Class Members on September 8, 2022, then that Class Member shall receive 2% of the Net Allocation Fund defined above.

*Id*. at ¶ 4.

All Settlement Award determinations are based on payroll and timekeeping records for Class Members produced by Defendants. The timekeeping records were certified by the Class Members at the time of submission to Defendant Novitas and analyzed by Class Counsel prior to entering into settlement of this Action.

### III.    Proposed Notice Program, Settlement Structure, and Release

Within seven (7) days of the Court's Order preliminarily approving the settlement, Defendants, who, the parties agree, will self-administer the Settlement,

will send the Notice of Settlement to each class member. Ex. 1 at ¶ 8. The Notice explains in clear and easy to understand language the settlement structure, the settlement amount, the requested attorneys' fees, the requested service award, the scope of the release, and the class member's options to object, or request to be excluded. *Id*. Class members may opt out of the settlement by submitting a written note or letter to the address provided in the Notice within thirty (30) days of the mailing of the Notice. *Id*. at ¶ 7. Likewise, class members may object to the settlement by preparing a written objection as to why the settlement is not fair or reasonable and mailing a copy to the address provided within thirty (30) days of the mailing of the Notice. *Id*. at ¶ 8.

Within fourteen (14) days of the Court's final approval of the Settlement, Defendants shall process and mail by U.S. first class mail the Settlement Award Checks to all Class Members who have not opted out from participation in the Settlement. *Id*. After mailing the Settlement Award Checks to all Class Members, Defendants shall confirm in writing to Collective Counsel the date that such mailing has been made. *Id.* If the postal service returns any Notice of Settlement or Settlement Award Checks with a forwarding address, Defendants will promptly re-mail the Notice of Settlement and Settlement Award Checks to the forwarding address. *Id.* If the postal service returns any Notice of Settlement and Settlement Award Checks to Releasees as undeliverable without a forwarding address,

Defendants will use reasonable diligence to obtain a current address and re-mail the envelope to such address within ten (10) days of the receipt of the returned envelope. *Id.*

Each Settlement Award check shall be valid for one hundred eighty (180) days after issuance (the "Claims Period"). *Id.* At the end of the Claims Period, the balance of any uncashed checks will revert to Releasees. *Id.*

To participate in the settlement, class members do not need to do anything — there is no claims process. Class members who *do not* request to be excluded from the settlement will receive a check in the mail for their settlement allocation. *Id.* All settlement payments made to Class Members by Defendants will be reportable on an IRS Form 1099. *Id.* at ¶ 4.

In consideration of the Settlement benefits paid to them by Defendants, all Class Members will release and forever discharge Defendants (as well as Defendants' past and present parents, subsidiaries, affiliates and joint venturers and each of their past and present directors, officers, agents, employees, lawyers, benefit plans and plan administrators, and each of their successors and assigns) from all wage-related claims for work performed by the Class Member for Novitas during any pay period from June 22, 2019 through September 3, 2022, including (1) all claims for recovery of regular or overtime wages, (2) all claims relating to timely payment of wages, (3) all claims for liquidated or enhanced damages under state or

federal wage law, (4) all claims under state contract law or common law relating to payment of wages, and (5) all related claims for interest, costs, and attorney's fees. *Id*. at ¶ 6. Any Class Member who opts out from participation in this settlement will not be subject to this release. Each settlement check will include language indicating to the Class Member that by cashing the check the Class Member is accepting the settlement. *Id.* at ¶ 6.

## IV.    Service Awards, Attorneys' Fees and Costs

The Settlement Agreement provides for a $5,000 service award for Plaintiff Potts to be paid from the settlement fund subject to the Court's final approval of the settlement. *Ex. 1* at ¶ 11. In consideration of the service award, Plaintiff Potts will sign a general release of claims she has, may have, or claims to have had against Defendants (and Releasees) as of the date of execution of the general release.

In addition to, and subject to approval by the Court, the settlement fund will be used to pay Class Counsel's attorneys' fees and expenses. *Id*. at ¶ 10.  Prior to the deadline for class members to object or opt out of the settlement, Class Counsel will file a motion for attorneys' fees not to exceed one-third of the common fund ($166,666.67) and reasonable expenses of $572.00. *Id*.

# ARGUMENT

## I.    Standard of Review

"Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation." *SEPTA v. Orrstown Fin. Servs.*, 2023 LEXIS 17135, at *2 (M.D. Pa. Feb. 1. 1, 2023) (Kane, J.) (quoting *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014)). Only if the proposed settlement is found to be preliminarily acceptable does a court direct notice to all class members who would be bound by the settlement, so that they may have an opportunity to be heard, object to, and potentially opt out of the settlement. *Id.*

Under Rule 23(e)(1), as amended December 1, 2018, the Court must direct notice to the class of a settlement upon determining that notice is justified because the Court concludes it is more likely than not to finally approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). The amendments specify that before finally approving a settlement, a court should consider whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal; how the relief will be distributed; the terms governing attorneys' fees; and

any side agreements; and (4) whether class members are treated equitably relative to each other. *Id.*

The goal of the Court's inquiry at the preliminary approval stage is to determine whether a proposed settlement is fair and likely to be approved. *See In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013) ("The role of a district court is not to determine whether the settlement is the fairest possible resolution . . . The Court must determine whether the compromises reflected in the settlement . . . are fair, reasonable, and adequate when considered from the perspective of the class as a whole."). Where the negotiated resolution is fair, reasonable, and adequate, the Third Circuit favors settlement over protracted litigation. *In re Gen. Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Plaintiff respectfully submits that this settlement meets (and exceeds) the requirements for preliminary approval, certification of the settlement classes, and issuance of notice.

## II.    The Proposed Settlement is Fair, Reasonable, and Adequate

Pursuant to Rule 23(e)(1)(B)(i), the Court may preliminarily approve a class action settlement if it "will likely be able to approve the proposal under Rule

23(e)(2)" which entails reviewing four (4) enumerated factors. Plaintiff addresses each factor in turn.

### A.    Class Counsel Has Adequately Represented the Class

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23, Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes"); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (class counsel should have "adequate appreciation of the merits of the case before negotiating").

Here, the adequacy factor is satisfied. First, Plaintiff's counsel have devoted much of their practice over the last decade to prosecuting wage and hour claims against employers and have a deep knowledge of wage and hour practices, the type of evidence that typically exists, and how to value these claims. Second, through documents and data produced by Defendants, Plaintiff's counsel have all information necessary to evaluate the merits of the claims, including: certified time records of each Class Member which indicate all hours worked by each employee during the relevant class period; records of payments made by Defendants to Class Members through the pendency of this litigation to reflect any overtime pay they may have been owed as a result of this litigation; and payroll records of all Class

Members during the relevant class period. Third – and most importantly – Plaintiff's counsel have achieved a significant recovery on behalf of the Class Members that provides recovery of what would reflect unpaid overtime for all hours certified on timekeeping records submitted to Defendants by the Class Members, as well as liquidated damages under the FLSA and Pennsylvania law, and payment of pre-judgment interest to each Class Member. For these reasons, the Court should find that the class has been adequately represented.

**B. The Settlement Was Negotiated at Arm's Length**

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." *See* Fed. R. Civ. P. 23(e), Advisory Committee Notes. *See also In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (noting that "participation of an independent mediator . . . virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties") (internal quotations omitted). Here, this factor is likely to be satisfied because the settlement was achieved through arm's-length negotiations culminating in a settlement conference facilitated by Chief United States Magistrate Judge Mehalchick.

**C.    The Relief Provided to the Class is Adequate Under Fed. R. Civ. P. 23**

Rule 23(e) charges the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and

appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *See* Fed. R. Civ. P. 23(e)(2)(c)(i-iv).

In this case, all factors point toward settlement approval. Each of the factors identified by Rule 23(e)(2)(c)(2) should be viewed in light of the meaningful monetary benefit this settlement confers on class members and the fact that class members will be mailed a check without the need to participate in a claims process. Based on class-wide wage and hour data, Plaintiff calculated class-wide unpaid overtime wages, along with accompanying incentive pay, of $229,125.46. The common fund, which includes payments already made by Defendants to the Class Members as a result of this litigation, represents 100% of the unpaid overtime wages at issue, along with accompanying damages available by statute which would have been available to the Class Members had a judgment been entered in their favor. Likewise, the average class member payment—net of all fees, service awards, and administration costs—are estimated to be over $3,800. That is a significant recovery in any wage case (and class actions generally).[1]

---

[1] *See, e.g., Dillworth v. Case Farms Processing, Inc*., 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (approving a class action settlement that recovered "approximately one-third of claimed unpaid wages" and finding "there can be no

**1.    The relief provided to the class is adequate considering the costs, risks, and delay of trial and appeal.**

Considering the costs, risks, and delay of trial and appeal, the proposed settlement satisfies Rule 23(e)(2)(c)(i). As noted above, the settlement confers a significant monetary payment on class members representing 100% of not just their unpaid overtime wages but also a full recovery of all attendant damages accessible to the Class Members under the FLSA and Pennsylvania state law. The Class Members are being paid everything that could be awarded to them in a jury verdict without incurring the costs, risks, and delay of trial. This factor is likely to be satisfied and weighs in favor of settlement approval.

**2.    The relief provided to the class is adequate considering the effectiveness of distributing relief to the class.**

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. In this case, class members are not required to file any claim forms nor take any affirmative steps to receive a settlement payment. Instead, unless class members opt out or request to be excluded, they will automatically be sent a check for their settlement amount. Ex. 1,

---

doubt that the results achieved for the class members are exceptional."); *Southwood v. Milestone Mgmt. PA-Feasterville, LLC*, No. CV 19-2569, 2020 WL 5554396, at *4 (E.D. Pa. Sept. 15, 2020) (approving FLSA and PMWA settlement for "54% of the amount Plaintiff claims to be owed" and finding this to be a "positive result.").

at ¶ 8. Moreover, every individual covered by the settlement will receive an individualized notice form that explains the settlement and specifies his or her anticipated settlement payment amount. *See* Ex. 2, Notice. This factor is thus likely to be satisfied and weighs in favor of settlement approval.

### 3. The relief provided to the class is adequate considering the terms of the proposed award of attorneys' fees.

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Advisory Committee Notes to Fed. R. Civ. P. 23. In this case, Plaintiff will petition the Court for an award of attorneys' fees of up to one-third of the common fund, or $166.666.67, plus reasonable expenses of $572.00. Ex. 1, at ¶ 10(a).

At the final approval stage, Plaintiff will fully brief the fairness and reasonableness of the requested attorneys' fees under the Third Circuit's *Gunter* and *Prudential* factors. *Tompkins v. Farmers Ins. Exch*., 2017 WL 4284114, at *9-10 (E.D. Pa. Sept. 27, 2017) (Leeson, J.) (describing factors). In the meantime, preliminary approval is warranted because a 33.33% fee recovery is the "benchmark" in wage and hour cases. *Id*. This factor is likely to be satisfied and weighs in favor of settlement approval.

### 4. The relief provided to the class is adequate considering there are no agreements required to be identified under Rule 23(e).

The only agreement between the parties is the Settlement Agreement and the General Release for Plaintiff Potts. This factor is thus likely to be satisfied and weighs in favor of settlement approval.

### D.    The Settlement Treats Class Members Equitably to One Another

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Advisory Committee Notes. In this case, counsel worked to create a formula that pays each Class Member a proportional, or equitable, share of the Net Allocation Fund based on their certified hours worked and resulting portion of wage payments sent to all Class Members by Defendants during the pendency of the litigation. These initial payments sent by Defendants reflected payment for all overtime hours worked by the Class Members during the Class Period based on timekeeping records submitted and certified by each Class Member. The Net Allocation Fund, then, pays the Class Members proportionally based on this data, which has been analyzed and approved by the parties. *Ex.* 2 at ¶ 4. This factor is likely to be satisfied and weighs in favor of settlement approval.

## III.    Class Certification for Settlement Purposes is Warranted

Having determined that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second half of the preliminary approval inquiry: whether the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii).  As discussed in more detail above, Plaintiff will ask the Court to

certify the Class for settlement purposes only.

To obtain class certification, Plaintiff must satisfy Rule 23(a)'s four (4) requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). In addition, Plaintiff must satisfy Rule 23(b)(3)'s two (2) additional requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff is likely to satisfy these requirements here.

### A. Numerosity is Likely to be Satisfied

The numerosity inquiry tests whether joinder of all class members in a single proceeding would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). While there is no magic number that satisfies the numerosity requirement, the Third Circuit has acknowledged, as a general rule, that a class of twenty (20) or fewer fails to meet the numerosity requirement. *In re Modafinil Antitrust Litig*., 837 F.3d 238, 250 (3d Cir. 2016). While a class of twenty-plus is not guaranteed to meet the numerosity requirement, Courts tend to find numerosity when the class is ascertainable rather than speculative. See *Hayes v. Wal-Mart Stores, Inc*., 725 F.3d 349, 357 (3d Cir. 2013) ("Mere speculation as to the number of class members—even if such speculation is 'a bet worth making'—cannot support a finding of numerosity.")

Here, the class is made of twenty-four (24) employees. This number surpasses the Court's general rule against finding numerosity for a class of fewer than twenty (20) and each member of the class is ascertainable by name, address, and employee number; there is no speculation as to the number of Class Members. Numerosity is likely to be satisfied.

### B.    Commonality is Likely to be Satisfied

As this Court has held, commonality "will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Huffman*, 2018 WL 583046, at *8 (quoting *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). This requirement is "easily met." *Id*.

In this case, the Settlement Class Members share the common legal and factual questions of whether the Settlement Class Members were entitled to overtime pay under the FLSA or PMWA's overtime pay policies; whether the Settlement Class Members were denied compensation for overtime hours worked; and whether Defendant's alleged failure to pay the Settlement Class Members compensation for overtime hours worked violated the federal or state wage and hour laws. While these are not the only legal and factual questions common among each member of the Settlement Class, these questions of law and fact are alone sufficient to satisfy the commonality requirement.

### C.     Typicality is Likely to be Satisfied

The typicality requirement is meant to ensure that the named plaintiff's claims and theories of liability are typical of the classes she seeks to represent. *Huffman v. Prudential Ins. Co. of Am.*, 2018 WL 583046, (E.D. Pa. Jan. 29, 2018) (Leeson, J.), at *8 ("The Third Circuit has noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.") (internal quotations omitted).

Here, the Named Plaintiff's claims for unpaid overtime compensation during weeks she worked in excess of forty (40) hours in a workweek as a Targeted Education Specialist are typical of – if not identical to – the types of claims of the proposed Settlement Class. These employees worked in the same position, under the same policies, and under the same pay structure of Defendants all during the Class Period. Typicality is met.

### D.     Adequacy is Likely to be Satisfied

Rule 23(a)(4)'s adequacy requirement will be satisfied "if (1) the interests of the class representative do not conflict with the class members' interests and (2) class counsel are experienced, vigorously prosecuted the action, and acted at arm's length from the defendant." *See Huffman*, 2018 WL 583046, at *9 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004)).

In this case, there are no conflicts of interest between Named Plaintiff Potts and the Settlement Class. Plaintiff Potts, as a member of the class, has been incentivized to maximize recovery for the class, which she has done. Likewise, Named Plaintiff Potts has engaged counsel who have collectively prosecuted numerous class and collective actions against a variety of employers for the same or similar wage and hour claims. Adequacy is likely to be satisfied.

### E.    Predominance is Likely to be Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The Supreme Court recently summarized the predominance test as follows:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal citations omitted).

As discussed above, the Settlement Class Members share the common legal and factual questions of whether the Settlement Class Members were entitled to overtime pay under the FLSA or PMWA's overtime pay policies; whether the

Settlement Class Members were denied compensation for overtime hours worked; and whether Defendant's failure to pay the Settlement Class Members compensation for overtime hours worked violated the federal or state wage and hour laws. These predominant issues affect the entire Settlement Class. Predominance is satisfied.

### F.    Superiority is Likely to be Satisfied

Rule 23(b)(3) also requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," *In re Prudential Insurance Co. America Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998), and "sets out several factors relevant to the superiority inquiry," *id*. at 315. As discussed below, these factors favor class certification:

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions."  This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts. *See* Newberg on Class Actions § 4:69. This is not such a lawsuit. Here, the average settlement payment exceeds $3,800 and, though undoubtedly material to class members, damages at this level are best and most efficiently prosecuted through representative litigation. Further, this case does not involve personal injuries or other emotionally charged issues.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. This factor is not relevant because no related litigation exists.

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Fed. R. Civ. P. 23(b)(3)(C). Here, concentration of all claims in this Court is both efficient and desirable because all of the class members either worked in or around this judicial district, or reported directly to management in this district.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). This requirement is automatically satisfied when a case is certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, (1997). Superiority is thus likely to be satisfied.

## IV.    The Proposed Class Notice Satisfies Rule 23

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice can be effectuated through "United States mail, electronic means, or other

appropriate means." *Id.* Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed R. Civ. P. 23(c)(2)(B).

Here, all of the above requirements are satisfied and the proposed Notice is "the best notice that is practicable." The proposed Notice along with the proposed manner of distribution was negotiated and agreed to by the parties. All Settlement Class Members have been identified by Defendants in a class list, which Defendants will provide to Plaintiff's counsel reflecting each employee's employee identification number. *See* Ex. 1 at ¶ 8. Defendants will mail the Notice of Settlement to all Class Members. *Id*. After mailing the Notice of Settlement to all Class Members, Defendants will confirm in writing to Plaintiff's the date that such mailing has been made. *Id*. If the post office returns any package to Defendants with a forwarding address, Defendants will promptly re-mail the packet to the forwarding address. *Id*. If the post office returns any packet to Defendants without a forwarding address, the administrator will work diligently to obtain an updated address and will promptly mail the package to any updated address. *Id*. Individuals will have 30 days

from the mailing of the Notice to exclude themselves from (*i.e.* opt out) or object to the settlement. *Id.*

The proposed Notice of Settlement, which is attached to the Settlement Agreement, referenced herein as Exhibit 2, explains the following in clear and easily understood language, as required by Rule 23: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; contact information for Class Counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and, the binding effect of a class judgment on members under Rule 23(c)(3). *See* Ex. 2.

## V.    The Proposed Implementation Schedule

The Settlement Agreement contains a proposed schedule for notice and final approval of the Settlement Agreement. Plaintiff respectfully requests that this Court approve the proposed schedule, which follows:

| | |
|---|---|
| Defendant Provides Settlement Class Contact Information | Within seven (7) business days after the Court's Preliminary Approval Order |
| Notice Sent by Defendants | Within seven (7) business days after the Court's Preliminary Approval Order |
| Plaintiff's Motion for Approval of Attorneys' Fees and Costs | Thirty (30) days after Notice is sent |
| Deadline to Postmark Objections or Requests for Exclusion ("Objection and Exclusion Deadline") | Thirty (30) days after Notice is sent |
| Plaintiff's Unopposed Motion for Final Approval | Five (5) business days prior to Final Approval Hearing |
| Defendant mails settlement checks | Within fourteen (14) days of the Court's final approval of settlement. |

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests the Court grant the unopposed motion to direct class notice and preliminarily approve class action settlement and the relief prayed for therein, enter the proposed order, and for any other relief the Court deems appropriate under the circumstances.

Dated: June 28, 2023                              Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**

*/s/ Derrek W. Cummings*
Derrek W. Cummings, PA Bar 83286
Larry A. Weisberg, PA Bar 83410
Michael J. Bradley, PA Bar 329880
2704 Commerce Dr., Suite B
Harrisburg, Pennsylvania 17110
Telephone:  (717) 238-5707
Facsimile:   (717) 233-8133
dcummings@weisbergcummings.com
lweisberg@weisbergcummings.com
mbradley@weisbergcummings.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2023, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.


**WEISBERG CUMMINGS, P.C.**


Dated:  <u>June 28, 2023</u>          <u>*/s/ Derrek W. Cummings*</u>
                                       Derrek W. Cummings